The first case that we have this morning is United States v. DeLeon, 22-3036, and we'll start with Ms. Gorman. Good morning. May it please the Court. My name is Sarah Gorman, and I represent the appellant, Angel DeLeon. I intend to reserve two minutes for rebuttal, but we'll see how that goes. Angel DeLeon's conviction for violent crime in aid of racketeering, the murder of Frank Castillo, should be vacated, and this Court should remand the case for a new trial. The strength of the government's case relied on contaminated DNA evidence, a blatant disregard for Federal Rule of Evidence 404B and the Court's previous ruling, and compromised witnesses. The government's goal with this indictment was to secure as many convictions as they could by any means necessary, including presenting inadmissible evidence to the jury, which the District Court facilitated by allowing inadmissible propensity evidence in violation of Federal Rule of Evidence 404B and 403, and when the District Court violated its own previous ruling and admitted prejudicial testimony about the Sindicato de Nuevo México, or the S&M, completely unrelated to Mr. DeLeon and the crime for which he was charged. Now, I want to begin my argument by talking about the last point in my brief, but the most recent development chronologically, which was Mr. DeLeon's motion under Rule 37 for indicative ruling based on newly discovered evidence and the concurrent motion for new trial. Now, the DNA evidence in this case was the only scientific or neutral evidence against Mr. DeLeon, and the District Court's denial of the Rule 37 motion in 2023 for indicative ruling, along with the related motion for new trial, was air, and the case should be remanded for a new trial. Can I stop and ask you a question that I don't know particularly bears on the outcome, but it certainly will bear on the way we analyze it. Are we reviewing the denial of a motion for indicative ruling under 37 or the denial of a motion for a new trial? I think the government has interpreted it as a denial of the motion for a new trial. I think the way you've couched it is basically the denial of a motion for indicative ruling, or at least the conclusion that there's not a substantial issue. But I wonder if we decide the issue as you have framed it, whether it really is materially significant at all. In other words, if we say, okay, you should have granted the motion for an indicative ruling, all that means is we shouldn't be here right now. We should have abated the appeal and waited for the district judge to rule on that. So I'm a little confused on the legal significance of the denial of a motion for indicative ruling. Well, Your Honor, I actually am arguing both arguments, actually. First of all, the motion for indicative ruling, and again, the Rule 37 is actually not, there's not a whole lot out there on the Rule 37, but it's mostly used in cases like this for newly discovered evidence. So the way that I couch my argument, both to the district court and to this court, is that first of all, there is a substantial issue under Rule 37 based on the newly discovered evidence. Now, the court can do one of, can do several things under that rule. The court can, what we asked the court to do was to flat-out rule yes, there is a substantial issue, and that issue is newly discovered evidence that merits a new trial under the United States v. Sinclair factors. However, the court did not have to grant the motion for new trial at that point. The court could have also, and we asked the court to do this alternatively, which was to grant the motion for Rule 37, finding that a substantial issue has been raised in this newly discovered evidence, asking this court, the Tenth Circuit, to remand jurisdiction to the district court for further proceedings and further briefing. The district court flat-out denied both of those. So my argument is both, that there is enough evidence here and in front of the district court to have granted the motion for new trial, but even if this court or the district court weren't convinced, then granting the Rule 37 for further briefing and further argument was absolutely appropriate, given the substantial nature of this evidence. And the evidence we're talking about is the DNA. No, that's why, what evidence are you talking about? Are you talking about this view of this association that opined on problems at the lab in New Mexico? Well, it's not just the view of the association. So what the newly discovered evidence is, is what came out in 2023. Now, just for a little bit of background, during the trial in 2021, there was two DNA testing, or testimony regarding two DNA testing. In 2001, which was the time of the murder of Frank Castillo, there was DNA testing done where Mr. De Leon's DNA came back on the ligature that was used to strangle Frank Castillo. In 2014, there was retesting done where there was no DNA of Mr. De Leon found on the ligature. At the time of trial, the government argued that was degradation. We argued, no, there was actually a high likelihood of cross-contamination because Mr. De Leon's shirt, which had bloodstains on it, was examined right next to the ligature, and DNA is aerosol. It travels through the force of air. So the pipetting process where these two samples were placed right next to each other could have very likely led to cross-contamination and would have been the reason. We understand that, but what about the new evidence? So the new evidence in 2023, there was a complaint by... Let me ask you, this evidence was not available to you at the time of trial. That is correct. Okay. So the new evidence is the accrediting agency's red alert investigation, which resulted in a deficiency summary report, as well as the deficiency reports, which contained within them admissions from the lab, and that is the most important piece there, admissions from the New Mexico Department of Public Safety lab, that not only were there other contamination events in the form of corrective action reports, but also the lab's own admission by the director that the space was actually cramped and there was not enough space for testing. Okay. Did the testimony of the New Mexico folks in the lab and the evidence that you put on, did it talk about the problems as of 2001 or as of the time that they were testifying? At trial in 2021, we... Is that the court's question? If there was contamination, what we have to worry about is contamination in 2001 and the condition of the lab at the time. Correct. Did the testimony you had at trial reflect back over two decades earlier? Correct. The lab itself had not changed. The space itself had not changed since 2001. During trial, we cross-examined the lab technicians regarding the fact that they examined the two pieces of evidence so close together and that that was a violation of their guidelines. Now, the lab technicians denied that and said that they had followed all proper guidance. But in 2023, what we have and what the lab technician or the lab director admitted, and this is the same lab, the same space, and we did confirm that with the lab before filing this motion, and that was in the motion for new trial and the motion for indicative ruling. The space was the same. And the lab director made admissions in response to the accrediting agency's sustained allegations that there was issues of cross-contamination in this lab. Precisely what did the lab director say that was an admission? She wrote a letter in response to the accrediting agency because the accrediting agency required the lab to respond to the sustained allegations and to provide how they were going to remedy the situation. And her letter indicated that the lab space had been cramped and it had been the same lab for decades and that the state of New Mexico was going to be building a new lab to deal with this issue because the space was cramped and it led to cross-contamination. Was there any testimony regarding whether the procedures at the time of this letter were exactly the same as the procedures in the lab in 2001? Not at trial because this letter came about after. Okay, at trial. Was there testimony that the procedures at the time of trial were the same as they were in 2001? There was not specific testimony in that regard. There was testimony regarding the lab not having followed the specific guidelines in examining pieces of evidence with time and space differences between those two. All right, so the evidence is pretty much the same. It's just that it's updated between the time of trial and this motion for an indicative hearing. That's actually not the case, Your Honor. In this case, what's very important about this new investigation and the complaint by the accrediting agency and the admissions by the lab is that we actually have the lab, the authority, the actual testing lab, making admissions that there is the likelihood of cross-contamination. Okay, but you had the lab people on the stand during the trial. So I'm struggling with how this new evidence is not definitionally cumulative. Well, because at the time of trial, these two, both of these technicians, both Kristen Radecki and Eve Toccomoro who testified, they denied that there were issues of cross-contamination. And here we have substantive evidence from the lab admitting that there are. And why this is important is – No, no, no, no, no. They denied that there was contamination in this case. The new evidence doesn't say there was contamination in this case. Isn't that correct? That's correct. It does not say that. But it provides a different context to the jury than what was available. And isn't that definitionally cumulative? I would argue that it's not. I would argue that it is actually substantive because we actually have the lab itself who has made these admissions, who has provided documents to its own accrediting agency. And why that's important here is because the government argues in their brief that there was so much other evidence and the judge itself, the district court, said, well, this was just icing on the cake and that the jury wasn't that interested in the DNA evidence. But in the trial in 2021, there were only two pieces of direct evidence that allegedly placed Mr. DeLeon in that cell where the murder of Frank Castillo happened. One was a cooperating snitch witness who was significantly compromised because this man admitted, Michael Jaramillo, admitted to himself having murdered Frank Castillo and never having been prosecuted for this in exchange for his testimony. That's pretty good evidence. The guy that ordered Mr. DeLeon to do the hit, you can say, well, he's compromised. But, yeah, he's compromised because he admitted that he was a co-conspirator in this very murder. Well, I mean, this particular witness was actually not the one who there were two witnesses who testified directly about the murder of Frank Castillo. One was Leonard Lucan who testified that he basically told the players who was going to do what and that they were to commit this murder. And then there was Michael Jaramillo, who was the witness who testified that he actually strangled Frank Castillo and that Mr. DeLeon held down his legs. Now, the problem with Michael Jaramillo is this man, although an admitted murderer, testified in two different trials and in exchange for that, never received, was never indicted, never received any type of punishment for his own murder, which is a significant motive and bias to lie. The only neutral evidence was the DNA evidence, and that evidence bolstered the testimony of these cooperating witnesses because they may have had motive to lie, but the DNA is supposed to be the type of evidence that does not lie. And I think – Ms. Gorman, your argument is wholly in the context that – to a challenge on the sufficiency of the evidence, correct? That's the context. The context of the argument here is under the Sinclair factors for a motion for a new trial and whether there is a substantial issue. I understand that, but your issue in this appeal is the sufficiency of the evidence, correct? Well, in this appeal I have several arguments, but regarding the DNA – You have challenged the sufficiency of the evidence, correct or incorrect? That is correct. All right. And when you do that challenge, the evidence is viewed and construed in favor of upholding the verdict, correct? It is viewed in the light most favorable to the district court. That is correct. Right. And so you have to – that is the context in which you view the new evidence that you want to bring in. And if you construe the evidence in the light most favorable to supporting the verdict, you have all these witnesses testifying and you construe it in favor of affirming the verdict. And cumulative new evidence regarding the DNA doesn't change that formula. And don't you lose then? I don't believe so, Your Honor, especially when we're talking about that evidence that Your Honor is characterizing of the other witnesses. There were significant errors by the court in admitting some of that evidence, and that was the basis of the other arguments in my brief regarding the 404B evidence, which was improper propensity evidence, which was admitted both because it was late, deficient, and it was extrinsic evidence. Now, there was a list of eight acts provided by the government very late, once the jury had already been empaneled and once opening statements were about to begin. Of those eight, two we admitted were intrinsic to the court excluded, and there were three that the government did enter. Now, it's clear that the notice was late under Rule 404B, which explicitly states notice must be given in advance of trial, and there must be specific non-propensity reasons given in that notice, which did not happen. Now, the government argues they were intrinsic. That wasn't the case. To be intrinsic, the acts must be intimately connected or blended with the factual circumstances of the charged offense. And here we had three different, an alleged assault in 1998, yard security, which was essentially enacting violent acts to protect the gang, and the validation of Mr. De Leon, all of which were unrelated to the murder of Frank Castillo. What did you argue to Judge Browning that the yard security was extrinsic? The passages that you cited, I think, were right before Mr. Alonzo testified, and you said, or it was you or your colleague, said that, well, I think we've gotten to the point that it's cumulative, and so that's certainly an argument. It's not the argument that you're presenting here. And you said that, I think, that in his 302, he gets a – the 302 reflects that Alonzo was talking about De Leon smashing people. De Leon doesn't – I mean, Alonzo doesn't testify about that, and you're not arguing that. It's the yard security. And the only passage that I saw, I think it's on 1688, that you refer to was, I think he's getting into – that I think he's going to get into stuff that is extrinsic under 404, but you don't say what that stuff was. And it can't be stuff that was from the letter that the government wrote at Judge Browning's insistence, because yard security is not one of those entries in the letter. So I don't know how Judge Browning could have known that you were – he certainly didn't object during Alonzo's testimony that, okay, he testified about the yard security, not a word. Where did you preserve that argument on the yard security, that it was not intrinsic? And I do realize my time is up, so I'm going to go ahead and – So regarding that, well, first of all, there was the initial objection made at the time when the government indicated they hadn't even provided a list as to any of these matters coming in. Didn't he say, okay, let's see how it goes? And he said, we'll see how it goes. But he did make initial objections, initial rulings. And I just want to be clear, the government makes that argument as well, that it wasn't properly preserved. But under the case that they argue, United States v. Fonseca, futile repeated objections need not be made. And we did object at that point. And there were objections made to the context of this testimony. Now, Judge Browning clearly was on alert already at that time and knew what we were talking about. And I think that also goes into the other argument I made, which was regarding other evidence of S&M violence, and I'm not sure how much further the Court will allow me to continue, but regarding S&M violence and how the Court exceeded its own ruling in that case, which prejudiced Mr. De Leon as well. Okay. If that wasn't your fault, that was my fault, because I asked you a long question right when your clock was expired. Do you have any questions? Any questions for a friend? Thank you. Thank you, Your Honor. May it please the Court. Counsel, my name is Richard Williams. I'm an assistant United States attorney in Las Cruces, New Mexico, and I represent the United States. This Court should affirm the district court judgment in all respects. Vicar statute includes as elements not only that a defendant commit the violent crime, but that the defendant do so with a particular purpose, that purpose being to maintain or enhance his position in the racketeering organization. Turning to the last topic that was discussed with counsel, the intrinsic evidence. The district court reasonably assessed the proffered evidence and determined that it was intrinsic, that being that it provided necessary background or contextual information relevant to Mr. De Leon's commission of the vicar crime. Mr. De Leon did not concede his membership in the S&M nor that he had the required purpose for committing the crime. The yard security information in particular that related to when he was a prospect in 1997 and carried knives on behalf of the S&M in the yard, we would submit that that was not preserved, that there was not an objection made. Bless you. At the time, it was proffered, but regardless, it was appropriate intrinsic evidence. Mr. Williams, I may have misremembered the record because I know there was discussion about Alonzo's testimony about him carrying knives, but I didn't think that he actually testified. I thought he just testified that he did yard security. Did he actually testify as part of yard security that he carried knives? He described that that's what yard security was, I believe, was the testimony. He's carrying knives in the yard on behalf of the S&M, which would have been relevant to what Mr. De Leon would have done at the time as a prospect, as someone who wanted to join the S&M, showing that he was willing to act to protect S&M members in the prison yard. The only piece of evidence relating to Mr. De Leon's bad acts that was preserved was the 1998 assault. The district court made an appropriate assessment of that, admitted it as intrinsic because it was relevant to show not only that Mr. De Leon was an S&M member, which as the court noted was fuzzy at that time, but that he was willing to follow orders of the S&M, which is an integral rule of the gang and distinctly relevant to the instant offense, which was an ordered murder, and De Leon followed those orders in committing that crime. Turning to the second argument that the council makes relating to the enterprise evidence, we, as noted in our brief, believe that that argument was not preserved for a variety of reasons. The primary legal doctrine cited was law of the case, which wasn't made to the district court, and so would only be reviewed on plain error if our plain error was urged. It was not, so it's waived. As to the other pieces of enterprise evidence, we'd argue it was largely not preserved for failure to- That's what defense counsel was specifically arguing before Alonzo testified. Before Mr. Alonzo's testimony? Right, that we've already reached the cumulative point on the enterprise evidence and specifically referenced enterprise evidence, I think. Am I wrong about that? That argument was made, but as to the specific evidence at the time it was admitted, there was no objection made, and the district court appropriately described the evidence to be admitted as opposed to evidence that was being admitted merely to impeach the government witnesses. As de Leon argued extensively at trial, these were witnesses who had extensive criminal histories ranging from murders to assaults to other things, and so much of the evidence that came in relating to individual witnesses related to their individual histories and was relevant for impeachment purposes or for the government to be able to front that for impeachment. Didn't defense counsel in their opening statement acknowledge that they are not disputing the existence of a criminal enterprise? They did acknowledge they weren't disputing the first three elements, the enterprise, interstate commerce, and racketeering acts. Yes, so given before there's a single witness called, they specifically tell the jurors we're not disputing the existence of a criminal enterprise. So you're saying, but we still get to present evidence of a criminal enterprise even though it's stipulated? And we would believe that is what old chief teaches, that a defendant cannot stipulate his way out of the full force of the evidence in the case. As this court in Martinez pointed out, a defendant can't put up a firewall against evidence. But doesn't it at least suggest that when the district judge is acting as a gatekeeper under Rule 403, notwithstanding old chief, the district court certainly has, should exercise its discretion to narrowly allow enterprise evidence. I mean, you would concede that, shouldn't you? I mean, that should at least be a factor that the defendant says to the jury, you know, don't acquit this guy based on the absence of a criminal enterprise. Absolutely. And we believe that that's exactly what the district court did. In fact, it said that it was going to corral the government's case. It specifically limited the evidence of other murders that the government could introduce robustly to a mere three examples, three different murders. And those were introduced not only to show the longevity and structure of the gang, but also for the purposes that were not conceded, that Mr. De Leon had the motive required in order to commit the act charged in the indictment. As this court in Martinez emphasized, this type of evidence in a racketeering or a bike car case in particular can go to show multiple different purposes. Here, specifically, it went to the importance of following orders within the gang. The three other murders that were admitted robustly all related to gang hits or murders that were ordered. Just like in this case, the Castillo murder was ordered by the higher ups in the prison at the time. And that's relevant to show why Mr. De Leon would be motivated to follow orders and to believe that doing the crime would enhance his position in the gang. Additionally, the evidence is significant to show how violence played an essential role within the S&M and why that's another reason Mr. De Leon would believe that committing the crime would enhance his position in the gang. So if there are no other questions about the enterprise evidence, I'll turn to the last question about the motion for new trial or motion for indicative ruling. Before you do that, there's two aspects of the evidence, and the other one is 403. What about the 403 reissue that she's raised? With respect to the enterprise evidence? Yes. So we would submit that the district court appropriately balanced it, that none of this evidence would have caused the jury to make an emotional response to the evidence. It's pretty emotional evidence, don't you think? Well, it's indicative of the violence of the S&M gang, but what's of particular note is that it related to other people, not Mr. De Leon, and that the evidence as to Mr. De Leon's murder was equally as violent. There was firsthand testimony from Mr. Jaramillo as to how the Castillo murder was committed, and so the district court was correct not to find that evidence of the S&M's other violence substantially outweighed its probative value to show De Leon's motivation in committing the crime as well as the structural background of the gang. Part of the analysis does have to include whether or not a robust presentation has crossed the line in 403, and a semi-robust presentation, something less, would have been more appropriate, and therefore the robust violates 403. What do you say to that? That the court took that into account when it was corralling the evidence, and as the trial went on, it limited the evidence more and more, and we believe that that's exactly what the district court was supposed to do, was to weigh the probative value and find that it was not, that the risk... But the court thought that the presentation that was made was robust, correct? Well, what the court said is that the government could present robust evidence of these three other murders, and the testimony at trial, it actually all came in through the witness testimony of the people who had participated in those other crimes. There was no additional evidence. It was the witnesses testifying, and so those three crimes were the Garza murder, the Felix Martinez murder, and then the Matthew Cavalier murder, and we believe that they all had the probative value to show the importance of following orders and that it wasn't substantially outweighed by the prejudice, given that they involved other S&M members. The details of those were sparse compared to the details of the instant case, and that the court appropriately instructed the jury that Mr. DeLeon was only on trial for the Castillo murder, not for any of these other murders. Let me ask you a question about, a follow-up on Judge Murphy's earlier question. So let's say I have a Bob Ackerack Association, and Joe Schmo is on trial, U.S. v. Joe Schmo, and Joe Schmo says, I am a member of the Bob Ackerack Association. Oh, that's nice. And then there's testimony that, oh, to be a member of the Bob Ackerack Association, you actually have to earn your bones. Well, what does that mean? Well, you have to commit a murder. And so then Chris Colbert says, well, Joe Schmo is a member of the Bob Ackerack Association. You don't have to be a rocket scientist to know that Joe Schmo has committed a murder in order to be a member of my association. Whether he killed Frank Castillo or not to the jury may be besides the point. They know from this innocuous testimony about other people, not DeLeon, that he earned his bones and earned his membership in this association by killing a guy. That's pretty prejudicial. I would agree that it's prejudicial, but it relates to other events besides the instant offense. Even though the tie-in is that they, like DeLeon, is a member, and he, like they, only earned their membership, including DeLeon's, by killing a guy. We would submit that the probative value of the way in which the gang is organized, the rules of the gang, the longevity of the gang, is significant to show why the individual charged with the specific Vicar Act would have been motivated to have done the act for the purposes required. And that is a significant element for the government in these types of cases. Indeed, this court reversed one of the other S&M cases on that element based on that type of evidence being insufficient. So we would submit that there is a 403 analysis, but the district court here appropriately made it and certainly didn't abuse his discretion or make an arbitrary or capricious decision. I see I'm almost out of time, but turning to the last issue, the first one you all raised, we would urge the court to view the district court's ruling as tantamount to a denial of the motion for new trial. Under Rule 37, there are three options, defer, deny, or make a statement that the court would either grant or fines a substantial issue so that this court can then remand. And of those three, what the district court here did that is most closely associated to one of those three is a denial. And for all the reasons outlined in the court's extensive memorandum opinion about the insignificance of the DNA evidence and the significant other evidence at trial, we would urge this court to find that that was not an abuse of discretion to deny the motion for new trial and ask the court to affirm. Any questions? Thank you, counsel. I think the appellant is out of time. Way over. She went way over. This matter is submitted. Thank you very much.